# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 2:25-MJ-534 |
| v. | : | |
| | : | GOVERNMENT'S MOTION TO APPEAL AND REVOKE ORDER OF RELEASE |
| DWAYNE K. FUNDERBURKE, | : | |
| Defendant. | : | |

On September 22, 2025, the defendant drove a vehicle into the barricades that give way to the parking lot of the Joseph P. Kinneary U.S. Courthouse in Columbus, Ohio. He then scaled a tall door to gain access to the secure portion of the parking lot. To gain access to the courthouse, he threw a trashcan through the secured glass door. He then entered the courthouse, where in 2008 he was sentenced to 63 months in prison. He remained for just under two hours while law enforcement organized their search.

Magistrate Judge Litkovitz released the defendant on the condition that he participate in residential treatment at Cedar Ridge to address his dependency on narcotics and his other mental health challenges. She also appointed a custodian—Ms. Smith, the defendant's girlfriend who he lived with when he committed the offense. Magistrate Judge Litkovitz also denied the United States's request for a 72-hour stay.

Because the defendant is dangerous for at least three reasons, and he is a serial evader of trial, the United States now seeks **two forms of relief** from the order: (1) a stay of the pretrial release order in this case until the Court has ruled on the government's accompanying motion to revoke; and (2) a revocation of the order permitting bond.

## **LEGAL STANDARD**

A person charged with a federal crime does not have an absolute right to pretrial release following an arrest. *United States v. Salerno*, 481 U.S. 739, 755 (1987). A defendant must be detained pending trial if a judicial officer concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making this determination, a court considers the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4). A finding of a risk of non-appearance must be supported by a preponderance of the evidence, and a finding of dangerousness must be supported by clear and convincing evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

As to conditions of release, the analyses are distinct, and conditions that could adequately address flight will not necessarily mitigate danger to a sufficient degree. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as a critical release component). In the end, any detention decision ultimately turns on the efficacy of potential conditions, which in turn hinges substantially on predicted compliance by a defendant. *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed, strict release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *Id*. at 1093 n.13 (stating

2

that any set of conditions except a "'replica detention facilit[y]'" necessarily would "hinge on [the defendant's] good faith compliance").

A district court is empowered to review a magistrate judge's pretrial release order. If a magistrate judge orders that a defendant be released pending trial, the government "may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1). The district court reviews a magistrate judge's decision *de novo*. *United States v. Mehmed*, 748 F. Supp. 3d 549, 552 (S.D. Ohio 2024). To that end, the district court "should not defer to the magistrate judge's ultimate conclusion," but instead should "make its own 'de novo' determination of facts[.]" *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000) (citations omitted). In conducting this *de novo* review, the district court "should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Peraza*, No. 3:24-CR-045, 2024 U.S. Dist. LEXIS 227907, at *2 (S.D. Ohio Dec. 17, 2024). The district court has the discretion to rely on the existing record, make new factual findings, accept additional evidence, or conduct a new hearing. *See United States v. Dominguez*, 509 F. App'x 28, 30 (2d Cir. 2013) ("On Section 3145(a) review, the district court was free to review the magistrate judge's factual findings de novo, and make new factual findings."); *United States v. Cidraz-Santiago*, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) ("A district court may take additional evidence or conduct a new evidentiary hearing when appropriate."); *United States v. Dai*, No. 3:23-CR-478, 2023 U.S. Dist. LEXIS 237124, at *4 (N.D.N.Y. Dec. 19, 2023) (observing that district court "may rely on the record developed before the magistrate judge and may also accept additional evidence."). A motion for revocation of a release order must be decided "promptly." 18 U.S.C. § 3145(a).

3

# ARGUMENT

There is little doubt the defendant needs treatment. That, however, was given greater weight than 18 U.S.C. § 3142 would permit; and cannot overshadow the facts that suggest the defendant remains dangerous and a high risk of nonappearance regardless of treatment. Pending the resolution of this case, the defendant should be detained without bond because the Court cannot fashion conditions that reasonably assure safety and the appearance of the defendant. Each of the 18 U.S.C. § 3142(e)(1) factors cut strongly against the defendant, and indicate that revocation of the release order is appropriate.

**A. The nature and circumstances of the offense demonstrate both the defendant's flightiness, and the danger he poses.**

First, as the defendant approached the courthouse, he was driving on the wrong side of a two-way street. The defendant driving, paired with his routine use of narcotics, is a danger that cannot be overstated. While the crash into the courthouse appears to be hardly an accident given his history in the building, he acknowledged to pretrial services that he was also using narcotics that evening. It is the defendant's good fortune that he struck a building, and not a pedestrian or an occupied vehicle.

Second, the defendant's efforts to get in the courthouse were relentless. After he crashed into the barricade, he first tried to enter by walking down towards the underground parking area. When this failed he came back up, scaled a tall door with a small gap above it. He then picked up a large metal trash can and threw it through a glass door.

Cedar Ridge is a health care provider, it is not a detention facility. If the defendant wants to leave, he will leave, and nothing will stop him. This is true for every condition placed on the defendant.

Finally, the defendant targeted the federal courthouse where he was previously sentenced to the longest term of imprisonment he has ever served. While the United States does not know what his intentions were once he entered the courthouse, to consider this an accident or that it was dumb luck that he hit *this* building defies any statistical probability. If released, nothing keeps the defendant from finishing whatever it is he started.

B. **The weight of the evidence against the defendant is as strong as it can be.**

As this Sixth Circuit has explained, "this factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010). However, in cases like this one, the weight of the evidence of dangerousness overlaps substantially with evidence of the defendant's guilt on the pending charges. *See United States v. Busbin*, No. 3:23-CR-182, 2024 U.S. Dist. LEXIS 55014 (M.D. Tenn. Mar. 27, 2024) ("[T]he weight of the evidence of dangerous[ness] can, in some cases, be enhanced by substantial weight of the evidence of guilt; this is because when the charges against a defendant themselves reflect dangerous conduct, evidence of guilt on those charges in some cases tends to reflect an ongoing danger to other persons or the community.").

An individual who breaks into a building using the force the defendant used is, by any definition, a dangerous person. And this case is not a "who done it." There is little question that Funderburke broke into the court house. The complaint affidavit details how clearly the courthouse security cameras caught his face. And the fact that he was found in the courthouse hiding should remove any legitimate doubt.

As to flight, the defendant was found hiding. Indeed, after one sweep of the courthouse, law enforcement had not found him. After confirming through camera review that nobody had

5

left the courthouse, they search the entire courthouse again. He was hiding. If he walks away from Cedar Ridge, it will not be to attend a court hearing, it will be to evade law enforcement.

    **C. The defendant's history and characteristics suggest he is a consistent danger to the community and himself, and that he will not appear for trial.**

The pretrial services report available to the Magistrate Judge in this case details sixteen instances of the defendant failing to appear for court; including one from earlier this year in London, Ohio stemming from an OVI conviction where the defendant violated the terms of his probation, and did not show up for the violation hearing. The warrant in that case remains active.

At the detention hearing, defense counsel gave great weight—as did the Magistrate Judge—to the fact that 8 of the 16 warrants were eventually recalled. But the detention statute does not ask the court to evaluate if the defendant will appear *eventually*.

Pretrial services followed this abysmal history of appearance for court by noting that per their PTRA calculations, the defendant is in a category of defendants that appear for court 96.8% of the time. But that percentage should be discounted entirely. With 25 rows of criminal history contained in the report, and 16 instances of nonappearance, it appears the defendant appears for court **less than 50%** of the time, give or take. And the type of case is irrelevant, contrary to defense counsels' suggestion at the detention hearing that some nonappearances were for misdemeanor cases. If the defendant cannot show up for court on small cases, why would we put our faith in him to appear for a federal felony trial.

Moving to the substance of his history, the defendant has multiple drug offenses that the Bail Reform Act treats as one of the primary indicators of both danger and flight. This includes a 2008 federal conviction for possession with intent to distribute crack cocaine, which was pled down from a charge of possession of a firearm during a drug trafficking crime.

6

The defendant was so undeterred that he returned to the game immediately upon release. In 2016 he was convicted for trafficking heroin in Chillicothe, Ohio. This conviction, and the federal conviction previous discussed, are separated by three distinct convictions for possession of controlled substances.

That is far from being all, the defendant has multiple convictions and arrests for firearm offenses, including for carrying a concealed firearm. The defendant also has several offenses relating to assault, theft, the receipt of stolen property, and even identity fraud.

Outside of periods of incarceration, the defendant has remained undeterred from committing crime for almost twenty years. Nearly all of his crimes either hurt people directly or create a substantial risk that the community will be harmed.

**D. The nature and seriousness of the danger cannot be mitigated by any combination of conditions.**

The risks the defendant poses are many, and some are deadly. To name a few, there is a risk he will continue to use and sell drugs. There is a risk he will combine these actions with driving. There is a risk he will lash out at law enforcement or the judiciary. These risks cannot be contained anywhere other than prison. There is simply no evidence this Court can rely on to suggest that the defendant will take any term of release seriously, or that he has the requisite good faith intent to deviate from his multi-decade-long track record.

Also, the Magistrate Judge appeared to give great deference to the efficacy of treatment, noting that this offense seems wrapped up in his medical issues and his narcotics addiction. But the defendant was already in treatment when he committed this offense. Yes, the defendant was already receiving treatment and was already proscribed medication when he broke into the federal courthouse. It is unclear to the United States how this time will be different—at least

nothing in the record suggests it will be. And the relevant question is not whether this treatment will somehow work differently from his other treatment, the question is what will happen when the defendant gets the urge to leave treatment. On September 22nd, the defendant gave the answer.

**E. The record contains no evidence of the defendant's good faith intention to comply, rather it suggests the defendant was not truthful with pretrial services.**

Conditions of release given to defendants with no intention of following them are homes built on sand. Not only does the Court have no positive evidence to rely on in determining that the defendant has the requisite intent to comply, the pretrial services report suggest that the defendant has no intention of engaging with the process honestly.

Of note, when discussing drug use, the defendant told pretrial services that he has used methamphetamine once, on the night of the charged incident. That is in contrast to his long history of involvement with drugs and is in stark contrast to what his proposed custodian told pretrial services, that the defendant "has a history of using heroin." The defendant also told pretrial services that he does not have suicidal thoughts. However, when checking in with the US Marshalls, the defendant stated he was suicidal. When asked if he had thoughts of hurting himself of others he said "yeah, both." That answer is concerning to the United States.

**F. A stay is appropriate while the Court resolves this motion.**

The United States respectfully moves the Court to enter a stay of the pretrial release order in this case until the Court has ruled on the government's accompanying motion to revoke that order under 18 U.S.C. § 3145(a)(1). *See United States v. Thomas*, No. 2:23-CR-071, 2023 U.S. Dist. LEXIS 102326, at *1 (S.D. Ohio June 12, 2023) (granting stay of pretrial release order until district court "resolves the Government's request"). A stay is also appropriate because Cedar

Ridge is not a detention facility. They cannot ensure that the defendant remains in their custody while the Court considers this motion.

## CONCLUSION

The United States respectfully requests that this Court stay the order of release pending resolution of this motion, and ultimately revoke the order of release and order that the defendant be detained without bond pending trial.

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

*s/Tyler J. Aagard*
TYLER J AAGARD (NC 54735)
Assistant United States Attorney
303 Marconi Blvd.
Columbus, Ohio 43215
Phone: (614) 469-5715